**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

                    Plaintiff,                    **MEMORANDUM OPINION**
                                          **AND ORDER**

      v.                                          Criminal No. 08-349 ADM/JJK

Marco Patrick Crespo,

                    Defendant.

_____

Marco P. Crespo, pro se.

Kimberly A. Svendsen, Esq., Assistant United States Attorney, Minneapolis, MN, for Plaintiff.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendant Marco Patrick Crespo's ("Crespo") Motion to Vacate, Set Aside or Correct a Sentence Pursuant to 28 U.S.C. § 2255 [Docket No. 68] ("2255 Motion"). For the reasons set forth herein, Crespo's Motion is denied.

## II. BACKGROUND

On October 24, 2008, Crespo was charged with one count of illegal re-entry after deportation, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2) and 6 U.S.C. §§ 202 and 557 [Docket No. 1]. At an initial appearance hearing on the same day, Magistrate Judge Susan R. Nelson appointed counsel from the Office of the Federal Defender to represent Crespo [Docket No. 2]. On November 18, 2008, a federal grand jury returned a one-count indictment against Crespo charging him with illegal re-entry after deportation. Crespo's appointed counsel filed several pretrial motions [Docket Nos. 12-16]. Before the motions hearing, Crespo terminated his

appointed counsel and retained his own counsel, Albert Garcia [Docket Nos. 20-22] ("Garcia").

Garcia filed additional pretrial motions on Crespo's behalf, including a motion to dismiss the

indictment [Docket Nos. 27-36]. Magistrate Judge Jeffrey J. Keyes issued a Report and

Recommendation ("R&R") denying Crespo's motion to dismiss the indictment [Docket No. 43].

By Order dated February 24, 2009, the Court adopted Judge Keyes's R&R in its entirety [Docket

No. 47].

On March 4, 2009, Crespo entered a guilty plea to the Indictment. At the outset of the

hearing, the following exchange occurred:

> The Court: All right. I do want to just ensure that you understand
> that Mr. Garcia has had some recent events in his life with regard to
> an arrest, as I understand it. Obviously he's in my eyes innocent at
> this point, there's been no proof of that charge, but it is important that
> you understand, Mr. Crespo, that this problem has arisen with regard
> to your attorney, Mr. Garcia. Through some phone communications
> between my calendar clerk and Mr. Garcia's office, it's my
> understanding that Mr. Garcia has already talked to you about this
> matter, is that right?
>
> [Crespo]: Yes. Yes.
>
> The Court: Are you okay? Are you willing to proceed with Mr.
> Garcia as your attorney?
>
> [Crespo]: Yes, I'm okay.
>
> The Court: Okay. And you understand that that in my mind is a
> separate matter entirely from this situation, but I want to make sure
> that you feel that you have competent, appropriate legal advice under
> the circumstances.
>
> [Crespo]: Yeah, I have confidence.
>
> The Court: All right. Mr. Garcia, is there anything that you wanted
> to put on the record about that or have I covered the bases there?
>
> Mr. Garcia: I think you've covered it, your Honor. If you want me

to make a little more specific inquiry, I'm happy to do so.

The Court: Okay, sure. Why don't you.

Mr. Garcia: Mr. Crespo, you and I have talked, in fact, we met the other night. You understand that I was recently arrested on a case out of Anoka County?

[Crespo]: Yes.

Mr. Garcia: And I explained all of that to you?

[Crespo]: Yes.

Mr. Garcia: In fact, you and your family know about that?

[Crespo]: Yes.

Mr. Garcia: And I've talked to your wife about that?

[Crespo]: Mm-hm.

Mr. Garcia: And nevertheless, you are satisfied with my continuing representation and confidence in my representation in this matter?

[Crespo]: Yes.

Mr. Garcia: And you want me to proceed in all aspects of this case --

[Crespo]: Yes.

Mr. Garcia: - - to its end.

[Crespo]: Mm-hm, yes.

Mr. Garcia: And you understand and I told you the specific nature of the allegations that were raised against me.

[Crespo]: Yes.

Mr. Garcia: And you're aware of the facts giving rise to that allegation. In fact, I think you have some pretty unique understanding of what gave rise to that.

> [Crespo]: Yes.
>
> Mr. Garcia:  And so you want to proceed.
>
> [Crespo]: Yes.
>
> Mr. Garcia: Thank you.  Sufficient your Honor?
>
> The Court: I think so.  Ms. Svendsen, are you satisfied that the waiver is appropriate?
>
> Ms. Svendsen: Yes, your Honor.

Change of Plea Hr'g Tr. [Docket No. 64] at 3-5.

The Court placed Crespo under oath, informed him that he could stop the proceedings and speak with his counsel in private at any time during the hearing, and assessed whether Crespo's decision to plead guilty appeared to be knowing, voluntary, and intelligent.  Id. at 6-14. During the colloquy, the Court again inquired:

> The Court: Okay.  Have you had enough time to talk to Mr. Garcia about your case?
>
> [Crespo]: Yes.
>
> The Court: And we've talked already because circumstances sort of required that we did about his representation of you, but are you comfortable with him proceeding as your attorney?
>
> [Crespo]: Yes.  I trust him.
>
> The Court: Okay.  And you understand you could have a different attorney if you chose to, but it is your decision - -
>
> [Crespo]: No, it's my decision to pick him.

Id. at 9.

During the plea hearing, the prosecution questioned Crespo. Crespo admitted that he (1) is a citizen and national of Ecuador; (2) was previously deported from the United States on or about February 25, 1992; (3) was previously convicted for third degree attempted sale of a controlled substance on or about October 26, 1989, in Queens County, New York, and for third degree robbery on or about April 29, 1991, in Queens County, New York; and (4) knowingly and unlawfully re-entered the United States without consent from the applicable authorities. Id. at 22-24.

Turning to the signed plea agreement between the parties, the Court informed Crespo that the base offense level was 8. Id. at 16; Plea Agr. at ¶ 5(a) [Docket No. 49]. The Court stated that there was a dispute regarding how the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G") applied to Crespo's circumstances. Change of Plea Hr'g Tr. at 15; Plea Agr. at ¶ 5(b). The prosecution contended that the base offense level should be increased by 16 levels because Crespo was deported after a conviction for a felony, namely, a drug trafficking offense, for which the sentence imposed exceeded 13 months, and a conviction for a felony, robbery, that is considered a crime of violence. Change of Plea Hr'g Tr. at 16; Plea Agr. at ¶ 5(b). Crespo believed the base offense level should be increased only by 4 levels because the deportation resulted from another felony and not a crime of violence. Change of Plea Hr'g Tr. at 16; Plea Agr. at ¶ 5(b). The Court stated that the parties believed that Crespo's criminal history category was I. Change of Plea Hr'g Tr. at 18; Plea Agr. at ¶ 5(e). The Court then explained that the applicable Guidelines range would turn on the Court's determination of the character of Crespo's prior convictions. Change of Plea Hr'g Tr. at 16; Plea Agr. ¶ 5(e) ("If the defendant's offense level is 21 and the criminal history category is I, the Guideline range is 37 to 46 months

imprisonment. If the defendant's offense level is 10 and the criminal history category is I, the Guideline range is 6 to 12 months imprisonment."). The Court stated that a two or three-level reduction for Crespo's acceptance of responsibility may apply, in the Court's discretion. Change of Plea Hr'g Tr. at 17; Plea Agr. ¶ 5(c). The Court informed Crespo that the plea agreement contemplated a minimum imprisonment term of 6 months and a maximum imprisonment term of 46 months. Change of Plea Hr'g Tr. at 18; Plea Agr. ¶ 5(g).

The Court then discussed paragraph 8 of the plea agreement[1] which included Crespo's waiver of his right to appeal and collateral attack.

> The Court: Then [the plea agreement] says in paragraph 8 that you're giving up your right to appeal as a part of this sentence. That isn't always required or in all plea agreements, but it says that part of the agreement that you've negotiated with the Government is that you would give up your right to appeal, to challenge my decision on sentencing, unless I were to sentence you to something more than 46 months. If it's 46 months or less, [the plea agreement] says that you're just going to go and do your time, but you would not challenge any sentence unless it exceeds 46 months.
>
> On the other side of things, the Government has said that they're not going to appeal the sentence unless it's less than six

---

[1] Paragraph 8 of the plea agreement, signed by Crespo, provides:

> Waivers of Appeal and Collateral Attack: The defendant understands that 18 U.S.C. § 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made by the United States in this plea agreement, the defendant hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal the defendant's sentence, unless the sentence exceeds 46 months imprisonment. The United States hereby waives the right to appeal the defendant's sentence unless the sentence is less than 6 months imprisonment. In addition, the defendant expressly waives the right to petition under 28 U.S.C. § 2255. The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

months, so it looks to me that they're trying to box me between six and 46 months and there wouldn't be an appeal. That seems to be a broad range and doesn't trouble me particularly, but I want to make sure you're okay with that.

[Crespo]: Yes.

The Court: Okay. And you've talked to Mr. Garcia about that?

[Crespo]: Yes.

The Court: Okay. You understand that the only way to really change my sentence, the only one that corrects my work, is the Court of Appeals and you're giving up that right. Do you know that?

[Crespo]: Yes.

The Court: And you're all right with that under these circumstances?

[Crespo]: Yes.

The Court: [The plea agreement] says that you're giving up that right knowingly, intelligently, voluntarily, and I just want to make sure that that is the actual situation here.

[Crespo]: Yeah, it is.

Change of Plea Hr'g Tr. at 20-21.

Prior to sentencing, the Court ordered a Presentence Investigation Report ("PSR"). The PSR recommended a 16-level Guidelines enhancement because Crespo was previously deported following a conviction for a felony drug trafficking offense for which the sentence imposed exceeded 13 months and also a conviction for a crime of violence. PSR at ¶ 15. After determining that the offense of conviction began in July 1998 when Crespo re-entered the United States, the PSR counted criminal history points for several of Crespo's prior convictions which included prior sentences imposed within 10 to 15 years of July 1998 pursuant to U.S.S.G. §§

4A1.2(e)(1) and (2) including: (1) a 1989 conviction for attempted sale of a controlled substance in the third degree; (2) a 1989 conviction for misdemeanor petit larceny; (3) a 1990 conviction for misdemeanor criminal possession of cocaine; (4) a 1990 conviction for third degree robbery; and (5) a 1994 conviction for misdemeanor petit larceny. Id. at ¶¶ 13, 23-27. Based on his prior convictions, the PSR calculated Crespo's criminal history category as V. Id. at ¶ 30. Based on a total offense level of 21, the PSR recommended an imprisonment range of 70 to 87 months. Id. at ¶ 57.

Crespo's counsel filed objections to the PSR arguing: (1) that Crespo was not convicted of a "crime of violence" and, therefore, the base offense level should only be increased by 4 levels, and (2) sentences imposed more than fifteen years prior to Crespo's commencement of the instant offense should not be used to enhance his sentence for this offense. Def.'s Objections to PSR [Docket No. 50] ¶¶ 1-2. The Government responded affirming its position in the plea agreement that the applicable Guidelines range should be 37 to 46 months. Government's Resp. to Def.'s Objections [Docket No. 52] at 1-2.

On July 10, 2009, the Court received a letter from Crespo complaining that his counsel was ineffective by being unprepared and failing to communicate, and expressing his dissatisfaction with the criminal history calculation in the PSR. Letter from Marco Crespo to the Honorable Ann D. Montgomery, United States District Court Judge, District of Minnesota (July 8, 2009) (on file with the United States District Court, District of Minnesota). The Court addressed this letter at the beginning of Crespo's sentencing on July 14, 2009.

> The Court: [B]efore we get to the issues with regard to the presentence investigation, the record should reflect that I've received your letter, Mr. Crespo, written - - dated July 8th and I received it July 10th, which indicates that you have some concerns about your

representation by Mr. Garcia. Are you prepared to proceed today, or is it your decision to terminate Mr. Garcia's services?
. . .

[Crespo]: Your Honor, I really don't want to, like, cause any inconvenience right here. I just want to keep going with the sentence and get over this - - this case.

The Court: Well, I don't think - - and I don't want you to worry about my inconvenience or inconvenience to anyone else. A significant chunk of your life is at stake here . . .

. . .

However, I will tell you - - I don't usually tell people ahead of time what the sentence is going to be and I'm not going to do that in your situation specifically, but I am going to tell you that it is my intent not so much on what I've heard from the defense or even the prosecution, but from the Probation Office and in light of the law with regard to guidelines, it is my intent to give you a sentence far below your Level V criminal history. I do think that's, as we say, overrepresented. I think because so much of it was long ago when you were in your twenties and there's a big gap and the nature of some of those offenses has convinced me that I should sentence you as if you were a Level I offender, which would move your guideline range down.

Now, that isn't, as I said, because of anything your counsel or even the prosecution did. I would do that in any case given your unique circumstances and situation and the offense here . . .

[Crespo]: Mm-hm.

The Court: But it is extremely important to me that you be comfortable with proceeding with counsel and going forward on the matter, because I don't want to have this case come back later on, or I don't want you to go off to prison and say, "You know, I didn't want to be represented at sentencing by Mr. Garcia and that shouldn't have happened." And you're going to hear things, people in prison saying, "Well, you know, the only thing you can do now that you've been sentenced is to go after the competency of your own counsel" or anything like that. So if you have any concerns about that, I want to address those today before I sentence you, and you are certainly entitled to have a new and different attorney under these particular circumstances in your case.

[Crespo]: One - - one big concern is the case in Connecticut, because actually, I told my lawyer to fix that case long time ago. Especially when my PSI was right there, I ask again if he will fix that case and he don't do anything about that, so that's my biggest concern, because if I want to - -

The Court: That particular concern - - the case in Connecticut isn't going to have any impact on the sentence because I'm going to reduce you to a Level I, so it's not adding any points. Now, that doesn't mean that your attorney - - and I don't know what efforts he made - - should or should not have done something with the Connecticut case, but that isn't going to impact your sentence. But I'm more bothered by the fact that you say you don't communicate well with him or he hasn't answered your questions. Those are the things that are more troubling to me.

[Crespo]: I just want to proceed with - - with the sentence and just finish this case.

The Court: And are you okay with Mr. Garcia representing you?

[Crespo]: I'm - - I'm okay with Mr. Garcia.

. . .

The Court: Well, I don't like getting in a relationship between a client and counsel . . . but bottom line, I want to make sure that it's your desire for me to proceed and go ahead and sentence you today, and secondly, that you are accepting Mr. Garcia as your attorney knowing that I would appoint someone else for you if you requested. Do you know that?

[Crespo]: Yes.

The Court: Is it your desire to proceed today?

[Crespo]: Yeah, it's my desire to proceed today.

Sentencing Tr. [Docket No. 61] at 2-6.

The Court added 16 points to the base offense level for a total offense level of 21, and then deducted 3 points for acceptance of responsibility. Id. at 9. The Court found that since the

PSR included an enhancement for convictions that were almost twenty years old, Crespo's criminal history was overstated and reduced it from a category V to a category I. Id. Thus, Crespo's Guidelines range was reduced from 70 to 87 months to 37 to 46 months. Id. The Court sentenced Crespo to 37 months imprisonment and a supervised release term of three years. Id. at 14-15.

After sentencing, the Eighth Circuit Court of Appeals appointed the Office of the Federal Defender to represent Crespo on direct appeal. Crespo's appointed counsel simultaneously moved to withdraw and filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). The Anders brief argued that this Court erred when it sentenced Crespo to 37 months imprisonment. The Eighth Circuit dismissed Crespo's appeal concluding:

> Upon careful review, we conclude that enforcement of the appeal waiver is warranted because Crespo's appeal falls within the scope of the waiver, Crespo knowingly and voluntarily entered into both the plea agreement and the appeal waiver, and enforcement of the waiver would not result in a miscarriage of justice given that Crespo received a sentence well below the correctly calculated Guidelines range and his mitigating circumstances are not extraordinary.

United States v. Crespo, 367 F. App'x. 731, 2010 WL 910346, at *1 (8th Cir. March 16, 2010) (per curiam) (unpublished). On July 19, 2010, Crespo filed the instant 2255 motion.

## III. DISCUSSION

### A. Standard of Review

28 U.S.C. § 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence. See United States v. Addonizio, 442 U.S. 178, 184-85 (1979). A prisoner is entitled to an evidentiary hearing on a 2255 motion "[u]nless the motion and the files and records of the case conclusively

show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. A hearing is unnecessary if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).

## B. Waiver of Appeal

As noted above, in his plea agreement, Crespo waived his right to appeal or collaterally attack any sentence as long as the Court sentenced him between 6 and 46 months imprisonment. A criminal defendant may waive his direct and collateral appeal rights in a plea agreement. DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000). The rationale is that "[w]aivers preserve the finality of judgments and sentences, and are of value to the accused to gain concessions from the government." Id. However, waivers are not absolute. Id. "A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea agreement was not knowing and voluntary because it was the result of ineffective assistance of counsel." Id. at 924; see also Chesney v. United States, 367 F.3d 1055, 1058-59 (8th Cir. 2004). "[W]hen the defendant's claims of ineffective assistance relate to the negotiation of, and entry into, the plea agreement and waiver," a court will not dismiss the 2255 motion on the basis of the plea agreement waiver. DeRoo, 223 F.3d at 924.

Crespo alleges generally that his counsel was ineffective for failing "to investigate the case at bar, and counsel's on-going criminal activity." 2255 Motion at 7. These claims appear unrelated to Crespo's decision to enter into the plea agreement. However, because of the

importance of the rights at issue, the Court will assume without deciding that Crespo's waiver was not knowing and voluntary and will reach the merits of his claim.

## C. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Courts apply a strong presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. If a defendant fails to establish prejudice as required by the second part of the Strickland test, a court need not address whether the attorney's representation was objectively reasonable. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

Crespo fails to specify how his counsel failed to investigate his case nor does he provide any information that his counsel missed or should have raised that would have impacted the outcome of Crespo's case. Neither does Crespo specify how his attorney's "ongoing criminal activity" rendered the assistance ineffective. As noted above, Crespo was advised on several occasions that his counsel was the subject of a criminal investigation and was given multiple opportunities to obtain new representation. Each time, Crespo affirmed his desire for Garcia to continue the representation.

Assuming for the sake of argument that counsel's performance fell below the objective standard of reasonable competence, Crespo fails to demonstrate a reasonable probability that but for his attorney's alleged unprofessional errors, the result of the proceeding would have been

different.  Crespo's counsel objected to the Guidelines calculations in the PSR making the very same arguments Crespo makes in the current motion.  Indeed, the Court imposed a substantial downward departure from the PSR's recommended Guidelines range.

Moreover, Crespo cannot demonstrate a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial.  See Hill v. Lockhart, 474 U.S. 52, 59 (1985).  At the plea colloquy, Crespo stated under oath that he had been provided enough time to speak with his counsel and was satisfied with his representation.  Change of Plea Hr'g Tr. at 3-5, 9.  The Court asked Crespo whether he understood the rights, including his right to a trial, that he was giving up by pleading guilty.  Id. at 11-14.  Crespo acknowledged these warnings and still admitted to the crime alleged and pleaded guilty.

Based on the record, and particularly Crespo's testimony at the plea hearing, it is clear that Crespo was fully informed and aware of his plea agreement and the consequences of pleading guilty.  Thus, the record is devoid of any evidence of prejudice and the Court rejects this claim.

**D.  Crespo's Sentencing Claim Was Addressed on Direct Appeal**

"[I]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255."  United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001).  Crespo argues that his sentence was substantively unreasonable.  The Eighth Circuit considered and rejected this argument on direct appeal.  See Crespo, 367 F. App'x. 731 at *1. Indeed, the Eighth Circuit expressly stated that "Crespo received a sentence well below the correctly calculated Guidelines range and his mitigating circumstances are not extraordinary."  Id. Therefore, Crespo cannot relitigate this issue through his 2255 Motion.

## IV.  CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court finds it unlikely that another court would decide the issues raised in this 2255 motion differently, or that any of the issues raised in Crespo's petition would be debatable among reasonable jurists.  Therefore, the Court declines to grant a certificate of appealability.

## V.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Crespo's Motion to Vacate, Set Aside or Correct a Sentence Pursuant to 28 U.S.C. § 2255 [Docket No. 68] is **DENIED** and a certificate of appealability shall not issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 29, 2010.